UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHAWN DAMON BARTH,

    Plaintiff,

v.

C/O BORBE, et al.,

    Defendants.

No. 2:20-cv-2202 KJN P

ORDER

I. <u>Introduction</u>

    Plaintiff is a state prisoner, proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

    Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis is granted.

    Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff is obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These

payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

II. Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v.

Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

The Civil Rights Act

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert. denied, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673

F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

III. Plaintiff's Allegations

Plaintiff's complaint contains a laundry list of alleged violations incurred while he was housed at California Medical Facility ("CMF") in Vacaville, from June 1, 2019, through June 1, 2020. In his introduction, plaintiff alleges "institutional terrorism," and claims that this is an action for damages against the California Department of Corrections ("CDCR") and defendants for their alleged failure to protect him. (ECF No. 1 at 2.) Plaintiff specifically alleges that he was: provided rotten food, denied fresh fruits and vegetables, and denied sufficient food; subjected to smoke in front of his bunk; locked outside and subjected to heat exceeding 90 degrees despite possessing a heat card; subjected to sexual harassment and threats of assault, emotional abuse, and sexual comments; denied accommodations under the Americans with Disabilities Act ("ADA"); subjected to obstruction of mail, both incoming and outgoing, and denied access to bible study; denied single cell status; and he was sent to the wrong prison where 1000 pages of legal work and other property was confiscated.

However, plaintiff then sets forth only two causes of action. First, he alleges that defendants Associate Warden Medina, Doe III, and Captain Brody violated the Eighth Amendment by denying plaintiff's medical needs; ADA accommodations, medications, equipment and classification; orthopedic surgeries; Prison Rape Elimination Act ("PREA") counseling; and workers compensation. (ECF No. 1 at 14.) He adds that defendants Borbe and Lockwood acted under color of state and federal law. (ECF No. 1 at 15.)

In his second cause of action, plaintiff names defendants Doe I, Brodie, Timms and PREA Compliance Manager (Doe 3), but then alleges that defendants Borbe and Lockwood violated plaintiff's Eighth Amendment rights by their "actions of neglect, intimidation, abuse, harassment and other violations of law against plaintiff." (ECF No. 11 at 15-16.) Specifically, plaintiff alleges a violation of "Title VI and the Office of Justice Program statute" which prohibits "harassment or use of racial slurs discrimination against gays, sexual conduct, retaliation for filing a complaint, or refusal by the agency to respond to complaints. . . .," and claims he has a

history of being denied government programs. (ECF No. 1 at 16.) He claims that "both" defendants failed to protect plaintiff's physical and mental health, which he alleges "illustrates a pattern of unlawful conduct." (Id.) Then, in ¶ 68, plaintiff alleges that defendants Toure, Borbe and Lockwood failed to intervene or provide plaintiff "food of equal calories" and to stop the inmate food workers from the abuse. (ECF No. 1 at 17.)

Plaintiff names as defendants Correctional Officers S. Borbe, Lockwood, and Toure; Associate Warden J. Medina, Food-Line Supervisor Marie, Mail Room Officer K. House, and Ad Seg Captain Brody. Plaintiff seeks money damages and return or replacement of his confiscated property.

IV. Discussion

In addition to being confusing, plaintiff's pleading is a "shotgun" or "kitchen sink" pleading against myriad individuals for alleged violations that occurred throughout the year he was housed at CMF. "The plaintiff who files a kitchen-sink complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support. . . . It is the plaintiff['s] burden, under both Rule 8 and Rule 11, to reasonably investigate [his] claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." Gurman v. Metro Housing & Redevelopment Authority, 842 F.Supp.2d 1151, 1153 (D. Minn. 2011), citing Fed. R. Civ. P. 8, 11.

Plaintiff includes no specific charging allegations as to defendant House. Although plaintiff alleges his medical needs were violated, he provides no facts supporting such claim.

Moreover, plaintiff attempts to join myriad unrelated claims against multiple defendants in one action. A plaintiff may properly assert multiple claims against a single defendant. Fed. Rule Civ. P. 18. In addition, a plaintiff may join multiple defendants in one action where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Unrelated claims against different defendants must be pursued in separate lawsuits. See

George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  In other words, joining more than one claim in a single complaint is proper when the claims are against the same defendant, but joining multiple defendants in one complaint is proper only if the claims against them are based on the same facts.  This rule is intended "not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees -- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)."  George, 507 F.3d at 607.  This is not the first time plaintiff has been advised that he may not bring multiple, unrelated claims against more than one defendant.  Barth v. Turner, No. 2:19-cv-1012 KJM JDP (E.D. Cal. April 6, 2020) (ECF No. 14 at 3).[1]

Plaintiff's claims do not arise from the same transaction, occurrence, or series of transactions and occurrences in which all defendants were involved.  Plaintiff's improper joinder of his unrelated claims cannot be remedied by dismissal of the unrelated claims because he failed to provide specific facts as to each defendant, and it is unclear which claims he wants to pursue in this action, and which claims he will choose to pursue in separate lawsuits.  See Fed. R. Civ. P. 21.  In addition, plaintiff is not prejudiced by such dismissal because his claims accrued in 2019 and 2020.  Thus, plaintiff's complaint must be dismissed.  Plaintiff is granted leave to file an amended complaint in which he raises only those claims arising from the same incident involving the same defendants.

VI. Unavailing Claims

The undersigned identifies the following claims which fail to state cognizable civil rights claims.

    A.  Verbal Sexual Harassment

Plaintiff does not include any allegations concerning inappropriate touching, or allege that he was sexually assaulted.  Plaintiff does not identify who sexually harassed him, or detail the

---

[1] A court may take judicial notice of court records.  See, e.g., Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotation omitted).

6

verbal harassment he was subjected to, but alleges that defendants failed to protect him from the harassment. Thus, it is unclear whether plaintiff alleges that defendants harassed plaintiff or whether it was other inmates (i.e. plaintiff's cellmate or inmate food workers). To the extent plaintiff alleges other inmates sexually harassed plaintiff, such inmates do not act under color of state law, and their actions do not support a civil rights claim.

Absent identification of who verbally harassed plaintiff and what was said, plaintiff fails to state a cognizable claim based on alleged sexual harassment. However, if plaintiff alleges that a prison employee sexually harassed plaintiff, the following standards would govern.

Sexual abuse of an inmate by a prison official is a violation of the Eighth Amendment. Wood v. Beauclair, 692 F.3d 1041, 1046, 1051 (9th Cir. 2012) (citing Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000)). In evaluating such a claim, "courts consider whether 'the official act[ed] with a sufficiently culpable state of mind' " -- the subjective component -- "and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation" -- the objective component. Wood, 692 F.3d at 1046 (alteration in original) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). As "sexual assault serves no valid penological purpose . . . where an inmate can prove that a prison guard committed a sexual assault, we presume the guard acted maliciously and sadistically for the very purpose of causing harm, and the subjective component of the Eighth Amendment claim is satisfied." Bearchild v. Cobban, 947 F.3d 1130, 1144 (9th Cir. 2020) (citing Wood, 692 F.3d at 1050; Schwenk, 204 F.3d at 1196 n.6). "Any sexual assault is objectively 'repugnant to the conscience of mankind' and therefore not de minimis for Eighth Amendment purposes." Bearchild, 947 F.3d at 1144 (quoting Hudson, 503 U.S. at 10). In other words,

> a prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner.

Bearchild, 947 F.3d at 1144.

////

Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not extend to all forms of sexual harassment. Allegations of sexual harassment that do not involve touching have routinely been found 'not sufficiently serious' to sustain an Eighth Amendment claim. Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004) (upholding dismissal of claim premised on allegations that correctional officer unzipped his pants and exposed his penis to an inmate from inside control booth); accord Somers v. Thurman, 109 F.3d 614, 624 (9th Cir. 1997) ("To hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd."). Verbal harassment may violate the Constitution when it is "unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage." Keenan , 83 F.3d at 1092 (holding that dismissal of verbal harassment claim was proper where plaintiff had not shown that the prison guards' "disrespectful and assaultive comments" were "unusually gross even for a prison setting and were calculated to and did cause him psychological damage"); Patrick v. Hernandez, 2018 WL 5095130, at *2 (E.D. Cal. Oct. 17, 2018) (denying cognizable claim where defendants gawked at plaintiff in a manner that suggested they wanted him to expose himself.); Bearchild, 947 F.3d at 1144 ("[T]here are occasions when legitimate penological objectives within a prison setting require invasive searches."); Grummet v. Rushen, 779 F.2d 491, 495 (9th Cir. 1985) ("[R]outine pat-down searches, which include the groin area, and which are otherwise justified by security needs, do not violate" the Constitution). Recently, another district court found that while the prison officer allegedly telling the plaintiff to "show him her tits" would be "highly inappropriate, deeply offensive and disrespectful," serving no legitimate penological purpose,

> court decisions addressing such claims do not support a conclusion that those alleged comments can be characterized as "unusually gross even for a prison setting" or as being calculated to cause plaintiff psychological damage. See Reed v. Racklin, No. 17-cv-0799-WBS-AC, 2019 WL 4745266, at *1, 4-5 (E.D. Cal. Sept. 30, 2019), report and recommendation adopted, No. 17-cv-0799-WBS-AC, 2019 WL 5566441 (E.D. Cal. Oct. 29, 2019) ("Unfortunately for plaintiff, the law is clear: verbal harassment, even if sexual in nature, does not without more violate the Constitution.") (collecting cases). . . .

Moore v. Calderon, 2021 WL 1541296, at *2 (E.D. Cal. Apr. 20, 2021) (collecting additional cases).

### B. Confiscation of Property

The United States Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).

Plaintiff alleged no facts which suggest that the deprivation of property was authorized. The California Legislature has provided a remedy for tort claims against public officials in the California Government Code, §§ 900, et seq. Because plaintiff has not attempted to seek redress in the state system, he cannot sue in federal court on the claim that the state deprived him of property without due process of the law. Thus, such claim must be dismissed as frivolous. See 28 U.S.C. § 1915(e)(2).

### C. ADA Claims

A substantial number of plaintiff's constitutional claims appear to be based on alleged violations of the ADA. The Ninth Circuit has expressly held that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his] individual capacity to vindicate rights created by Title II of the ADA. . . ." Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002). Thus, to the extent plaintiff intends to allege § 1983 claims against individual defendants based on violations of the ADA, plaintiff's claims fail and must be dismissed.

### D. Classification

A prisoner does not have a right to a particular classification or custody level under the Due Process Clause. See Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007) (concluding

California prisoner does not have liberty interest in residing at a level III prison as opposed to level IV prison); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (" '[A] prisoner has no constitutional right to a particular classification status.' ") (quoting Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976).). Inmates do not have a right to be housed in any particular prison. See Meachum v. Fano, 427 U.S. 215, 224-25 (1976) (conviction sufficiently extinguishes prisoner's liberty interest and empowers the state to confine him in any of its prisons; no liberty interest protect by the Due Process Clause is implicated in a prison's reclassification and transfer decisions).

### E. PREA-related claims

Plaintiff alleges he was denied PREA counseling. To the extent plaintiff contends defendants failed to comply with PREA, such claim is unavailing. The PREA, 42 U.S.C. §§ 156011-15609, "authorizes the reporting of incidents of rape in prison, allocation of grants, and creation of a study commission. It does not, however, give rise to a private cause of action." Porter v. Jennings, 2012 WL 1434986, at *1 (E.D. Cal. Apr. 25, 2012) (collecting cases); D'Agirbaud v. Kim, 2020 WL 3258408, at *8 (D. Haw. June 16, 2020) (recognizing that there is no private right of action to vindicate violations of the PREA). See also Blessing v. Firestone, 520 U.S. 329, 340-41 (1997) (statutory provision gives rise to federal right enforceable under § 1983 where the statute "unambiguously impose[s] a binding obligation on the States" by using "mandatory, rather than precatory, terms"). Because the PREA contains no private right of action, it does not create a right enforceable under § 1983. Thus, to the extent plaintiff attempts to allege his rights under the PREA have been violated, he cannot state a claim for relief.

### F. Workers Compensation

In California, the Workers' Compensation Act grants the Workers' Compensation Appeals Board exclusive authority to hear claims "[f]or the recovery of [workers'] compensation, or concerning any right or liability arising out of or incidental thereto." Cal. Labor Code § 5300(a); see also U.S. Fid. & Guar. Co. v. Lee Invs. LLC, 641 F.3d 1126, 1134 (9th Cir. 2011). The statute establishes "exclusive jurisdiction within the workers' compensation system for 'all disputes over coverage and payment.'" Mitchell v. Scott Wetzel Servs., Inc., 227 Cal. App. 3d

1474, 1480 (1991). Because exclusive jurisdiction is vested in the California workers' compensation system, this court lacks jurisdiction over such claim.

For all of the above reasons, plaintiff's complaint must be dismissed. However, the court grants leave to file an amended complaint.

VI. Standards Governing Putative Claims

To assist in amending his complaint, plaintiff is provided the following standards.

A. Conditions of Confinement Claim: Nutrition

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test. "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." Id. (internal quotations omitted). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. Id. at 835. In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Adequate food is a basic human need protected by the Eighth Amendment." Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998). With respect to meals, the Eighth Amendment requires "only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." LeMaire v. Maass, 121 F.3d 1444, 1456 (9th Cir. 1993) (citations omitted). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." Id. (quoting Hamm v. Dekalb County, 774 F.2d 1567, 1575 (9th Cir. 1985)). A prisoner may, however, state a claim where he alleges that he was served meals with insufficient calories for long periods of time. Id.; see Hutto v. Finney, 437 U.S. 678, 683-84

////

(1978) (prison diet that consisted of just 1,000 calories a day may be tolerable for a few days but "intolerably cruel for weeks or months").

B. Eighth Amendment Medical Claims

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

Indications that a prisoner has a serious medical need for treatment include the "'existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting McGuckin, 974 F.2d at 1059-60).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citing Estelle, 429 U.S. at 104-05). A difference of opinion between an inmate and prison medical

12

personnel -- or between medical professionals -- regarding the appropriate course of treatment does not amount to deliberate indifference to serious medical needs. Toguchi, 391 F.3d at 1058; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

### C. Mail

Prisoners have a First Amendment right to send and receive mail while incarcerated. Nordstrom v. Ryan, 856 F.3d 1265, 1271 (9th Cir. 2017). A prison may adopt regulations which impinge on an inmate's constitutional rights, however, "if those regulations are 'reasonably related to legitimate penological interests.'" Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). "Legitimate penological interests include security, order, and rehabilitation." Witherow, 52 F.3d at 265 (internal quotation marks omitted). Restrictions on outgoing personal correspondence "must have a closer fit between the regulation and the purpose it serves than incoming mail restrictions." Nordstrom, 856 F.3d at 1273.

The First Amendment also protects a prisoner's right to be present when his properly marked legal mail is opened. Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1211 (9th Cir. 2017). Prison officials may require legal mail to be "specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment." Wolff v. McDonnell, 418 U.S. 539, 576 (1974). "Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." Keenan, 83 F.3d at 1094.

### D. Access to the Courts

Prisoners have a constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977), limited in part on other grounds by Lewis, 518 U.S. at 354. The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. See Lewis, 518 U.S. at 353 n.3, 354-55. In order to frame a claim of a denial of the right to access the courts, a prisoner must

establish that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. Lewis, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348 (citation and internal quotations omitted); see also Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (noting that "[f]ailure to show that a 'non-frivolous legal claim had been frustrated' is fatal" to a claim for denial of access to legal materials) (citing Lewis, 518 U.S. at 353 & n.4).

### E. Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). A viable retaliation claim in the prison context has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

## VII. Exhaustion of Administrative Remedies

In his complaint, plaintiff claims his administrative remedies were "ineffective, or unattainable, unduly prolonged, inadequate, and blatantly designed to be futile." (ECF No. 1 at 3.) He then states that "to the extent which 'administrative remedies' were available, plaintiff has exhausted such process." (ECF No. 1 at 4.)

### A. Exhaustion Requirement

Plaintiff's claims challenging his conditions of confinement are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). "The PLRA mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)). The Supreme Court has held that courts may not excuse an inmate's failure to exhaust administrative remedies prior

to bringing suit under the PLRA, even to take into account "special" circumstances. Ross v. Blake, 136 S. Ct. 1850 (2016). The Court identified three circumstances where the administrative remedy would not offer relief, but added that "we expect that these circumstances will not often arise." Ross, 136 S. Ct. at 1859 (citation omitted).

Proper exhaustion of available remedies is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 95-96 (2006). The administrative process is exhausted only after the inmate complies with all relevant prison grievance procedures and receives a decision from the third level. Ngo, 548 U.S. at 95-96.

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that defendants must plead and prove. Albino, 747 F.3d at 1166. Thus, inmates are not required to specifically plead or demonstrate exhaustion in their complaints. In general, the defense should be brought as a Rule 56 motion for summary judgment, unless in the rare event that the prisoner's failure to exhaust is clear on the face of the complaint. Id. at 1171.

B. Administrative Appeal Process

The California Department of Corrections and Rehabilitation ("CDCR") provides inmates the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). California prisoners are required to proceed through three levels of appeal to exhaust the administrative appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the CDCR. See 15 Cal. Code Regs. § 3084.1-3084.9. A final decision from the Director's level of review satisfies the exhaustion requirement under 42 U.S.C. § 1997e(a). See Lira v. Herrera, 427 F.3d 1164, 1166-67 (9th Cir. 2005); see also Cal. Code Regs. tit. 15, § 3084.7(d)(3) (as amended Dec. 13, 2010).

////

////

C. Discussion

Plaintiff is advised that his belief that administrative remedies are ineffective or nonresponsive is not the proper test for whether administrative remedies are available. Indeed, the Supreme Court states that administrative remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter v. Nussle, 534 U.S. 516, 524 (2002); Ross, 136 S. Ct. 1856-57 (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the exhaustion requirement). Although exhaustion is an affirmative defense to be plead and proved by defendants, plaintiff is cautioned that failure to first exhaust his administrative remedies as to each claim he brings to federal court risks delayed adjudication or dismissal of such claim.

## VIII. Exhibits

Over a month after he filed his complaint, plaintiff submitted 156 pages of exhibits labeled "Job Assignments and Bed Logs," and including copies of administrative appeals and responses. (ECF No. 5 at 2-157.) With respect to exhibits, while they are permissible, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). Even if plaintiff had appended the exhibits to his pleading, it is not the duty of the court to look through all of his exhibits to determine whether or not he has claims cognizable under § 1983. Rather, the court looks to the factual allegations contained in the complaint to determine whether or not plaintiff stated a cognizable claim for relief under § 1983.[2] In fact, the court strongly recommends that exhibits should not be submitted where (1) they serve only to confuse the record and burden the court, or (2) they are intended as future evidence. If this action reaches a juncture at which the submission of evidence is appropriate and necessary (e.g., summary judgment or trial), plaintiff will have the opportunity at that time to submit his evidence. Thus, plaintiff's exhibits will remain in the court record, but are disregarded.

////

---

[2] The "court cannot be expected to 'fish a gold coin from a bucket of mud.'" Knapp v. Hogan, 738 F.3d 1106, 1111 (9th Cir. 2013) (quoting U.S. ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003)).

16

IX. Leave to Amend

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions about which he complains resulted in a deprivation of plaintiff's constitutional rights. See, e.g., West v. Atkins, 487 U.S. 42, 48 (1988). Also, the complaint must allege in specific terms how each named defendant is involved. Rizzo v. Goode, 423 U.S. 362, 371 (1976). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo, 423 U.S. at 371; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff may not change the nature of this suit by alleging new, unrelated claims.[3] See Fed. R. Civ. P. 20(a)(2). Plaintiff is cautioned that his continued violation of court orders may result in the involuntary dismissal of this action. Fed. R. Civ. P. 41(b).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)."). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."). Plaintiff must eliminate from his pleading all preambles, introductions, arguments, explanations, stories, griping, evidence, and the like. McHenry v. Renne, 84 F.3d 1172, 1180 (9th Cir. 1996) (affirming dismissal of § 1983 complaint for violation of Rule 8 after warning); see Crawford-El v. Britton, 523 U.S. 574, 597 (1998) (reiterating that "firm application of the Federal Rules of Civil Procedure is fully warranted" in prisoner cases). The court (and defendant) should be able

---

[3] Plaintiff may join multiple defendants in one action where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Unrelated claims against different defendants must be pursued in separate lawsuits. See George, 507 F.3d at 607.

to read and understand plaintiff's pleading within minutes. McHenry, 84 F.3d at 1177. A long, rambling pleading, including many defendants with unexplained, tenuous or implausible connection to the alleged constitutional injury or joining a series of unrelated claims against many defendants very likely will result in delaying the review required by 28 U.S.C. § 1915 and an order dismissing plaintiff's action pursuant to Fed. R. Civ. P. 41 for violation of these instructions. Plaintiff is encouraged to use the court's form complaint to assist plaintiff in articulating his claims against specific defendants.

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's complaint is dismissed.

4. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

    a. The completed Notice of Amendment; and

    b. An original and one copy of the Amended Complaint.

Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must also bear the docket number assigned to this case and must be labeled "Amended Complaint."

Failure to file an amended complaint in accordance with this order may result in the dismissal of this action.

5. The Clerk of the Court shall send plaintiff the court's form for filing a civil rights complaint by a prisoner.

6. Plaintiff's exhibits (ECF No. 5) are retained in the court record but disregarded.

Dated: April 29, 2021

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/wilb026.14b

|   |   |
|---|---|
| SHAWN DAMON BARTH,<br><br>   Plaintiff,<br><br> v.<br><br>C/O BORBE, et al.,<br><br>   Defendants. | No. 2:20-cv-2202 KJN P<br><br>NOTICE OF AMENDMENT |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

  Plaintiff hereby submits the following document in compliance with the court's order filed_____.

_____  Amended Complaint

DATED:

              _____
              Plaintiff